UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCELLUS CLARK,<br>　　　　Plaintiff,<br>　　v.<br>WALGREENS CO., et al.,<br>　　　　Defendants. | Case No. 22-cv-01588-PJH<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND TERMINATING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 21, 22 |

Plaintiff's motion to remand and defendants' motion to dismiss came on for hearing before this court on May 26, 2022. Plaintiff appeared through his counsel, Allison Norder. Defendants appeared through their counsel, Christopher Archibald. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS plaintiff's motion to remand and TERMINATES defendants' motion to dismiss.

## BACKGROUND

This is an employment discrimination lawsuit. Plaintiff Marcellus Clark is a 63-year-old African American man who began working for Walgreens in 1999 as an asset protection manager. Dkt. 16 ¶ 11. Plaintiff alleges that prior to April 2019, when Michael John Hourigan Jr ("Hourigan") became his supervisor, he consistently received high performance reviews. Id. ¶ 12. Plaintiff further alleges that Hourigan had a reputation for terminating older employees. Id. ¶ 15. Hourigan allegedly mentioned to plaintiff that he was aware of the rumors that he fired older employees but told plaintiff that all his decisions were "vetted" by Human Relations ("HR"). Id. In April 2019, Hourigan allegedly

1  took responsibilities away from plaintiff and gave those responsibilities to a younger
2  employee. Id. In August 2019, Hourigan allegedly fired two white asset protection
3  managers who were around the age of sixty and offered them severance packages. Id.
4  Around October 29, 2019, Hourigan allegedly gave plaintiff a 3.2/5 performance
5  evaluation, and remarked, "*Do you really think you can handle this job?*" Id. Hourigan
6  also allegedly threatened to place plaintiff on a performance improvement plan without
7  any explanation or reason for doing so. Id. In or around November 2019, Hourigan
8  allegedly scolded plaintiff for low participation and told plaintiff he would be visiting him
9  soon with an HR representative. Id. On or around February 7, 2020, plaintiff allegedly
10 met with Hourigan and HR generalist Namarata Kapadia ("Kapadia"). Id. ¶ 16. During
11 this meeting, Hourigan allegedly told plaintiff that he disagreed with plaintiff's recent
12 investigation of an employee and that he independently determined the employee was
13 stealing from the store. Id. Hourigan allegedly terminated plaintiff's employment at the
14 end of the meeting and immediately replaced him with an employee in her early thirties.
15 Id. ¶ 16–17. Plaintiff alleges that, within a year, Hourigan terminated the employment of
16 four asset protection managers over the age of forty and failed to offer severance
17 packages for the three managers that were African American. Id. ¶ 17.
18      On February 3, 2022, plaintiff brought this lawsuit against defendants Kapadia,
19 Walgreens, Walgreen Co., Walgreen National Corporation, Walgreen Pharmacy, and
20 Walgreens Boots Alliance, Inc. in the Superior Court of the State of California for the
21 County of San Mateo.[1] Dkt. 1-3 at 6. Plaintiff asserted the following causes of action: (1)
22 discrimination in violation of the Fair Employment and Housing Act ("FEHA"); (2) hostile
23 work environment harassment in violation of FEHA; (3) retaliation in violation of FEHA;
24 (4) failure to prevent discrimination, harassment, or retaliation in violation of FEHA; (5)
25 wrongful termination of employment in violation of public policy; (6) breach of implied-in-
26
27 ---
   [1] The court is informed that defendants have requested that plaintiff remove Walgreens
28 and Walgreens Pharmacy as defendants because they are not legal entities. See Dkt. 3
   ¶ 5; Dkt. 25 at 6, 16.

fact contract not to terminate employment without good cause; (7) negligent hiring, supervision, and retention; (8) intentional infliction of emotional distress; and (9) whistleblower retaliation pursuant to California Labor Code § 1102.5. Id. at 13–20. The only claim plaintiff asserted against defendant Kapadia was for hostile work environment harassment under FEHA. Id. at 14.

On March 14, 2022, defendants timely removed this lawsuit based on diversity jurisdiction, 28 U.S.C. § 1332. Dkt. 1 at 4. Plaintiff and defendant Kapadia are both citizens of California, but defendants asserted that plaintiff fraudulently joined Kapadia to defeat diversity jurisdiction. Id. at 7–14.

On April 1, 2022, plaintiff filed his first amended complaint ("FAC"). Dkt. 16. Plaintiff raised the same nine causes of action, and, again, only asserted against Kapadia a hostile work environment claim under FEHA. Id.

On April 13, 2022, plaintiff moved to remand this case to state court. Dkt. 22. A day earlier, defendants moved to dismiss plaintiff's FAC. Dkt. 21.

**DISCUSSION**

**A.  Legal Standard**

"A motion to remand is the proper procedure for challenging removal." Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th Cir. 2009). A court may remand a case either for lack of subject matter jurisdiction or for any defect in the removal procedure. See 28 U.S.C. § 1447(c). The "strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper, and that the court resolves all ambiguity in favor of remand to state court." Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009) (internal quotation marks omitted). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

**B.  Analysis**

Plaintiff moves to remand this case to state court. Plaintiff argues the parties lack complete diversity because he and defendant Kapadia are citizens of California and

defendants failed to prove that Kapadia was fraudulently joined in this action.

A defendant may remove a case to a federal court where the federal court would have had original jurisdiction over the action. See 28 U.S.C. § 1441(a). A federal district court has original jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and is between citizens of different states. See 28 U.S.C. § 1332(a)(1). Diversity of citizenship means "each defendant must be a citizen of a different state from each plaintiff." In re Digimarc Corp. Derivative Litigation, 549 F.3d 1223, 1234 (9th Cir. 2008). A defendant may still seek removal where there is a non-diverse defendant if the defendant proves the non-diverse defendant was fraudulently joined. See Grancare, LLC v. Thrower by & through Mills, 889 F.3d 543, 548 (9th Cir. 2018).

"There are two ways to establish fraudulent joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Id. (internal quotation marks omitted). "Fraudulent joinder is established the second way if a defendant shows that an individual joined in the action cannot be liable on any theory." Id. (internal quotation marks and alteration omitted). A defendant invoking federal diversity jurisdiction on the basis of fraudulent joinder "bears a heavy burden" due to the presumption against the finding of fraudulent joinder. Id. As such, a removing defendant must prove fraudulent joinder by "clear and convincing evidence." Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1206 (9th Cir. 2007). Courts have found fraudulent joinder "where a defendant demonstrates that a plaintiff is barred by the statute of limitations from bringing claims against that defendant" and "where a defendant presents extraordinarily strong evidence or arguments that a plaintiff could not possibly prevail on her claims against the allegedly fraudulently joined defendant." Grancare, LLC, 889 F.3d at 548.

A court may consider summary judgment-type evidence when resolving claims of fraudulent joinder. See Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1068 (9th Cir. 2001). If "there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that

1  the joinder was proper and remand the case to the state court." Grancare, LLC, 889 F.3d
2  at 548 (internal quotation marks omitted).  Indeed, in its analysis, a court must consider
3  "whether a deficiency in the complaint can possibly be cured by granting the plaintiff
4  leave to amend." Id. at 550.
5        In this instance, plaintiff asserts a FEHA hostile work environment harassment
6  claim based on age, race, color, ancestry, and/or national origin against defendant
7  Kapadia, the alleged sham defendant.  See Dkt. 16 at 13.  Under FEHA, "it is unlawful for
8  an employer, because of a protected classification, to discriminate against an employee
9  in compensation or in terms, conditions, or privileges of employment." Galvan v.
10 Dameron Hosp. Assn., 37 Cal. App. 5th 549, 558 (2019) (internal quotation marks
11 omitted).  To state a prima facie case for harassment, a plaintiff must show: "(1) she is a
12 member of a protected class; (2) she was subjected to unwelcome harassment; (3) the
13 harassment was based on her protected status; (4) the harassment unreasonably
14 interfered with her work performance by creating an intimidating, hostile, or offensive
15 work environment; and (5) defendants are liable for the harassment." Id. at 563.
16 "Harassment sufficient to support a FEHA claim must be severe and pervasive—it cannot
17 be occasional, isolated, sporadic, or trivial." Green v. Miyashiro, No. D077540, 2021 WL
18 1624266, at *4 (Cal. Ct. App. Apr. 27, 2021) (internal quotation marks omitted).  A "single
19 incident of harassing conduct is sufficient to create a triable issue regarding the existence
20 of a hostile work environment if the harassing conduct has unreasonably interfered with
21 the plaintiff's work performance or created an intimidating, hostile, or offensive working
22 environment." Cal. Gov't Code § 12923(b).
23       As alleged, plaintiff does not state a viable claim for harassment against defendant
24 Kapadia.  Based on the FAC, plaintiff infers that Kapadia approved Hourigan's decision to
25 terminate him.  He does so by alleging Kapadia attended his termination meeting and
26 alleging it was "common practice" for supervisors to consult higher level managers with
27 authority to approve terminations.  Dkt. 16 ¶ 15.  But these sparse allegations do not
28 amount to an actionable claim of harassment.  Indeed, plaintiff does not even allege that

Kapadia's conduct was severe or pervasive or that Kapadia's conduct contributed to a hostile work environment.

Nonetheless, defendants have not met their burden of proving that plaintiff could not possibly prevail on a harassment claim against Kapadia if given leave to amend.  In this respect, defendants note that Kapadia declares she only interacted with plaintiff on "a handful of occasions" and that she was "100% certain" she "never made any comments" regarding plaintiff's age, race, color, ancestry, or national origin and "never engaged in any conduct" related to plaintiff's age, race, color, ancestry, or national origin that could be interpreted as "meanness or bigotry."  Dkt. 4 (Kapadia Decl.) ¶¶ 5, 10–11.  But a declaration of this sort does not prove fraudulent joinder by clear and convincing evidence.  A "denial, even a sworn denial, of allegations does not prove their falsity." Grancare, LLC, 889 F.3d at 551.

Defendants also argue that Kapadia's attendance in plaintiff's termination hearing qualifies as management activities, which are activities shielded from FEHA harassment claims.  True, generally harassment under FEHA consists of "conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives."  Hiraishi v. DeLeon, No. 2D CIV. B310395, 2022 WL 761930, at *3 (Cal. Ct. App. Mar. 14, 2022) (internal quotation marks omitted); see Lawler v. Montblanc N. Am., LLC, 704 F.3d 1235, 1244 (9th Cir. 2013).  But "some official employment actions done in furtherance of a supervisor's managerial role can also have a secondary effect of communicating a hostile message."  Roby v. McKesson Corp., 47 Cal. 4th 686, 709 (2009).  On this point, defendants assert plaintiff fails to allege or show that Kapadia acted in a manner to communicate a hostile message.  First, the burden is on defendants, not plaintiff, to show that it is not possible for plaintiff to amend his complaint to make such allegations. Second, in his briefing, plaintiff states that Kapadia was directly involved in his termination, that Kapadia ratified Hourigan's decision to terminate him, and that Kapadia was "likely involved" in Hourigan's subsequent decision to terminate two African

American employees over the age of forty.  See Dkt. 22 at 16; Dkt. 27 at 7–8.  If alleged in a subsequent complaint with other facts, plaintiff could possibly assert a claim against Kapadia.  This is particularly true in light of Kapadia's alleged attendance of plaintiff's termination meeting, Hourigan's declaration stating Kapadia was not involved in the decision to terminate plaintiff, and Kapadia's declaration stating she did not communicate, or work with, asset protection managers like plaintiff as part of her day-to-day duties.  Dkt. 25-2 (Hourigan Decl.) ¶ 3; Dkt. 4 ¶ 3; see Lowe v. Michaels Stores, Inc., No. 222CV00026SVWRAO, 2022 WL 558249, at *2 (C.D. Cal. Feb. 24, 2022) (noting defendants did "not address the possibility that Plaintiff's harassment may have occurred outside the scope of the Manager Defendant's necessary job performance").

Accordingly, the court GRANTS plaintiff's motion to remand.  Because it lacks subject matter jurisdiction, the court does not reach defendants' motion to dismiss.

## CONCLUSION

Based on the foregoing, defendants have failed to establish that the court has subject matter jurisdiction over this action.  Accordingly, plaintiff's motion to remand is GRANTED (Dkt. 22), and defendants' motion to dismiss is TERMINATED (Dkt. 21).  The Clerk of Court is instructed to REMAND this case to San Mateo County Superior Court, as case number 22-CIV-00385.

**IT IS SO ORDERED.**

Dated: June 27, 2022

                                     /s/ *Phyllis J. Hamilton*
                                     PHYLLIS J. HAMILTON
                                     United States District Judge